# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | | |
|---|---|---|
| CANAL INSURANCE COMPANY, | ) | Case No. C07-553-JPD |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER ON CROSS-MOTIONS |
| LINCOLN GENERAL INSURANCE COMPANY, et al., | ) ) ) | FOR SUMMARY JUDGMENT |
| Defendants. | ) ) | |

## I. INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Canal Insurance Company ("plaintiff" or "Canal") and Defendant Lincoln General Insurance Company ("defendant" or "Lincoln") have filed cross-motions for summary judgment involving the proper interpretations of insurance policies issued by both companies, and disputing which policy would be primary to cover losses sustained in a truck and trailer accident that occurred in Wyoming in 2005. For the reasons set forth below, the summary judgment motion filed by Canal (Dkt. No. 56) is GRANTED, and the summary judgment motion filed by Lincoln (Dkt. No. 54) is DENIED.

## II. JURISDICTION

The complaint and the answer in this case seek declaratory relief and a reimbursement amount specified by each party. The parties do not dispute the Court's jurisdiction over this matter, which exists pursuant to 28 U.S.C. § 1332. Venue is proper under 28 U.S.C. §

ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT
PAGE – 1

1391(b). Pursuant to 28 U.S.C. § 636 (c), the parties have consented to having this case decided by the undersigned Magistrate Judge. Dkt. No. 18.

## III. FACTS AND PROCEDURAL HISTORY

The material facts in this case are undisputed. Canal is a South Carolina corporation that is in the business of providing insurance coverage and services. Dkt. No. 57, Ex. 1 (Metteer Decl.). Lincoln is a Pennsylvania corporation that is also in the business of providing insurance coverage and services. Dkt. No. 55, Ex. 2 (Collins Decl.). Both corporations are authorized to issue insurance policies in the State of Washington.

On November 13, 2005, defendant Iurie Pavelnco ("Pavelnco") was driving a Volvo tractor on Interstate 80 in Wyoming. The vehicle he was driving was leased from defendant Vladimir Litvinenko ("Litvinenko") pursuant to a Contractor/Carrier Operating Agreement with Anatoliy Polyakov, doing business as XL Freight Pro ("XL Freight Pro"). The services of Pavelnco as operator of the leased vehicle were included as part of the Contractor/Carrier Operating Agreement. The tractor operated by Pavelnco was rear-ended by a tractor-trailer driven by defendant Larry Longstreath. After the collision, Longstreath exited his vehicle to survey the damage and was struck by a tractor-trailer driven by Edna Churchill. Longstreath was seriously injured.

In 2006, Longstreath sued Pavelnco, XL Freight Pro, Churchill and the owner of Churchill's tractor-trailer in Wyoming federal district court ("the Wyoming Litigation"). Canal tendered the defense of Pavelnco and XL Freight Pro to Lincoln, claiming Lincoln had a duty to defend and to indemnify. Lincoln denied the tender. The suit against Pavelnco and XL Freight Pro was settled in 2007. Canal paid $225,000 and Lincoln paid $25,000 toward settlement. Both insurers reserved rights against the other with respect to their dispute as to which coverage was primary and which was excess. That is the subject matter of this suit.

A. <u>The Canal Policy</u>

Canal issued a Basic Automobile Liability Policy to XL Freight Pro. Dkt. No. 57, Ex.

ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT
PAGE – 2

1 (Metteer Decl.). The policy Declarations list a 1999 Freightliner Tractor and "any trailer while singularly attached to a scheduled tractor" as scheduled autos under the policy. *Id.* Ex 1 at 12. Neither the Volvo tractor, nor the trailer, nor the operator (Pavelnco) were listed in the Canal policy. The Canal policy, however, does provide:

> The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of **bodily injury or property damage** to which this insurance applies, caused by an **occurrence** and arising out of the ownership, maintenance or use, including loading and unloading, for the purposes stated as applicable thereto in the declarations, of an **owned automobile** or of a **temporary substitute automobile**. . . .[1]

*Id.* Ex. 1 at 14, 16.

Section III of the Canal policy also provides:

III. PERSONS INSURED:

> Each of the following is an **insured** under this insurance to the extent set forth below . . . .
>
> . . . .
>
> (c) any other person while using an **owned automobile** or a **temporary substitute automobile** with the permission of the **named insured**, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission.
>
> . . . .
>
> "**temporary substitute automobile**" means an **automobile** not owned by the **named insured** or any resident of the same household, while temporarily used with the permission of the owner as a substitute for an **owned automobile** when withdrawn from normal use for servicing or repair or because of its breakdown, loss or destruction.

*Id.* Ex. 1 at 15, 16

Prior to oral arguments in this matter, Lincoln maintained that the 1999 Volvo Tractor scheduled on its policy constituted a "temporary substitute automobile" covered by Canal's

---

[1] The term "automobile" in the Canal policy includes the Volvo tractor and trailer.

policy obligations to defend for damages arising out of the use of such a vehicle. *See* Dkt. No. 54 at 4-5; Dkt. No. 60 at 2. However, further inspection of the Canal policy reveals that the 1999 Volvo is not so covered. First, Lincoln has provided no evidence to suggest that the 1999 Volvo was used as a "substitute for an owned automobile" under the terms of Canal's policy. The undisputed facts reflect that the 1999 Volvo was neither a substitute nor a temporary auto; rather, the parties agree that it was an auto leased from defendant Litvinenko pursuant to the Contractor/Carrier Operating Agreement with Anatoliy Polyakov, Canal's insured. Second, Lincoln has presented no evidence regarding the prerequisite to the temporary substitute auto as defined by Canal's policy. Specifically, the record is devoid of evidence that the covered auto—the 1999 Freightliner Tractor—was "withdrawn from normal use for servicing or repair or because of its breakdown, loss or destruction." Dkt. No. 57, Ex. 1 at 16 (Metteer Decl.). Accordingly, but for the possible application of the MCS-90 Endorsement, the policy issued by Canal does not provide coverage for the claims asserted by Longstreath in the underlying lawsuit.

### B. The Lincoln Policy

Lincoln issued a "Truckers" policy to Litvineko, providing coverage in the amount of one million dollars. Dkt. No. 55, Ex. 2 (Collins Decl.). Although both the tractor and trailer leased to XL Freight Pro were scheduled vehicles on the Lincoln policy, the policy did not name either XL Freight Pro or Pavelnco as additional insureds. *Id.* The Lincoln policy also contained the following provision, in Section V.B.:

> 5. **Other Insurance – Primary and Excess Insurance Provisions**
>
>    a. This Coverage Form's Liability Coverage is primary for any covered "auto" while hired or borrowed by you and used exclusively in your business as a "trucker" and pursuant to operating rights granted to you by a public authority. This Coverage Form's Liability Coverage is excess over any other collectible insurance for any covered "auto" while hired or borrowed from you by another "trucker". . . .
>
>    . . . .

|   |   |
|---|---|
| 01 |     e.  Regardless of the provisions of Paragraphs **a.**, **b.** and **c.** above, this Coverage Form's Liability Coverage is primary for any |
| 02 |         liability assumed under an "insured contract." |

*Id.* Ex. 2 at 68.

Lincoln stresses the policy language that states it is obligated only as an excess carrier. Dkt. No. 54 at 16-17. Canal's position, however, is that it had no responsibility under its policy to pay for any damages for any claims arising thereunder because the 1999 Volvo tractor was not a scheduled automobile covered by the Canal policy. Dkt. No. 35 at 4, ¶ 20 (Amended Complaint); Dkt. No. 56 at 7-9. Accordingly, Canal argues that the only policy available was the Lincoln policy. Dkt. No. 56 at 7-15. This argument is further bolstered by the fact that the indemnity agreement included in the Carrier/Contractor Agreement between XL Freight Pro and Litvinenko invokes the above-quoted paragraph (e) of Lincoln's policy, as a situation in which the named insured (Litvinenko) has agreed to assume liability in an insured contract, making the Lincoln policy primary in this case. *See* Dkt. No. 55, Ex. 2 at 68 (Collins Decl.). The parties do not appear to dispute this interpretation of the underlying policies.

  C. <u>The MCS-90 Endorsement</u>

In addition to the insuring provisions set forth above, Canal's policy included a federally mandated endorsement known as the MCS-90. *See* Motor Carrier Act of 1980, Pub. L. No. 96-296, 94 Stat. 793 (1980); 49 C.F.R. §§ 387.7, 387.15. An MCS-90 endorsement was required in this case because XL Freight Pro was operating as an interstate carrier pursuant to an Interstate Commerce Commission ("ICC") certificate of authority. *See* 49 C.F.R § 1003.3. The endorsement provides:

> The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration's Bureau of Motor Carrier Safety (Bureau) and the Interstate Commerce Commission (ICC).
>
> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability

    described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury or to death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of terms of the policy except for the agreement contained in this endorsement.

Dkt. No. 51, Ex. 1 (Collins Decl.).

    The MCS-90 endorsement is designed to eliminate the possibility of denial of coverage by an insurer based upon an excess "other insurance" clause or other limiting provisions contained in the policy. *John Deere Ins. Co. v. Nueva,* 229 F.3d 853, 855 n.3 (9th Cir. 2000), *cert. denied*, 534 U.S. 1127 (2002). To this end, the purpose of the statute is to ensure that a motor carrier has independent financial responsibility to pay for losses sustained by the general public arising out of its operations. *Id.*; *Travelers Ins. Co. v. Transport Ins. Co.*, 787 F.2d 1133, 1139 (7th Cir. 1986). "Federal law applies to the operation and effect of [such] endorsements." *John Deere*, 229 F.3d at 856.

## IV.  QUESTION PRESENTED

    There is no dispute between the parties that the Canal policy, without the MCS-90 endorsement, does not provide coverage for the underlying loss sustained. Similarly, there is no dispute that the Lincoln policy does provide coverage for the claims. Accordingly, the sole question presented in this case is whether the MCS-90 endorsement on the Canal policy converts that policy into one providing primary coverage and leaves the Lincoln policy as

merely an excess policy, or whether the MCS-90 endorsement has no impact on the allocation of loss between the insurers in this case. This precise question has yet to be answered by the Ninth Circuit Court of Appeals.

## V. DISCUSSION

The decision in *Harco National Insurance Co. v. Bobac Trucking, Inc.*, 107 F.3d 733 (9th Cir. 1997), though a duty-to-defend case, is highly instructive on the Ninth Circuit's treatment of MCS-90. The issue in *Harco* was whether a trucker's liability insurer could recover reimbursement against an insured for amounts paid to settle an insured's liability arising from use of a vehicle not covered by the policy, but for which the insurer was obligated to pay judgment pursuant to an MCS-90 endorsement. *Id.* at 734. After an accident, the defendant tendered coverage to the plaintiff, which tender was refused, because neither the tractor nor the trailer were listed on the schedule of covered vehicles. *Id.* A declaratory action was filed, which resulted in a settlement to the person injured, and the insurance company then sought to recover the amounts it contributed to the settlement, pursuant to its obligations under the MCS-90 endorsement. *Id.* at 735.

The Ninth Circuit confirmed that there was no coverage under the principal policy, but that pursuant to the MCS-90 endorsement, Harco had an obligation to pay judgments in favor of the public rendered against the "insured" even though the vehicles involved were not covered by the primary policy. *Id.* The insured argued that the insurer had a duty to defend, citing California state law and an earlier California state law decision. *Id.* The court rejected this position and held that "federal courts have consistently stated that the MCS-90 endorsement does not create a duty to defend claims which are not covered by the policy but only by the endorsement." *Id.* at 735-36 (citing *Canal Ins. Co. v. First Gen. Ins. Co.,* 889 F. 2d 604, 612 (5th Cir. 1989), *modified on other grounds*, 901 F.2d 45 (5th Cir. 1990); *Carolina Cas. Ins. Co. v. Insurance Co. of N. America*, 595 F.2d 128, 144 (3rd Cir. 1979); *National Am. Ins. Co. v. Central States Carrier, Inc.*, 785 F. Supp. 793, 797 (D. Ind. 1992)). The court

further held that the MCS-90 endorsement does not expand coverage to "autos" not covered under the policy, and that a defense is provided only when an accident involves a covered auto. *Id.* at 736. In so holding, the court highlighted the portion of the endorsement specifying that "all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the [insurer]." *Id.* (alteration by *Harco* court).

The defendant in *Harco* attempted to distinguish cases proffered by the insurance company from its position, because its dispute involved a dispute between an insured and an insurer, not a dispute between two insurers. *See id.* The court held that this was a meaningless distinction. "The purpose of the MCS-90 is to protect the public, not to create a windfall to the insured." *Id.* (citing *Canal Ins. Co. v. First General Ins. Co.*, 889 F.2d 604, 611 (5th Cir. 1989) (observing that the MCS-90 protection "serves no purpose as against the insured or among insurers"), *modified on other grounds*, 901 F.2d 45 (5th Cir. 1990)). To this end, the Court concluded that the district court's comparison of the MCS-90 to that of a surety "was apt." *Id.*

In *John Deere Insurance Company v. Nueva*, the Ninth Circuit considered the MCS-90 endorsement in the context of a dispute between the insurer and its insured where a tractor/semitrailer rear-ended a bus resulting in a total loss of the bus and personal injury to its driver. *John Deere*, 229 F.3d at 854. The tractor/semitrailer unit was being operated by an uninsured driver, Inderjit Singh; the tractor was owned by Singh and Garcha d/b/a Blue Star, who were also uninsured. *Id.* The semitrailer, however, was owned by another company (Sahota) who was insured by the plaintiff. *Id.* Prior to the accident, Sahota agreed to sell the trailer to Blue Star, but because final payment had not been made and the title had not yet transferred, the Sahota policy with Deere included an MCS-90 endorsement. *Id.* John Deere filed a declaratory judgment action against the bus company and its driver seeking a declaration that it had no duty to indemnify the operator of the tractor/trailer. *Id.* The bus company filed a

cross claim for declaratory relief arguing that with respect to the policy, the driver of the tractor/trailer was an "insured" pursuant to the MCS-90 endorsement issued to the owner (Sahota) and its permissive user—the operator (Singh). *Id.*

The court began with an analysis of the policy and concluded that because the trailer was not listed in the declarations page, it was not a "covered auto." *Id.* at 855. This conclusion required the court to consider the possibility of coverage under the MCS-90 endorsement. The district court, relying upon *Harco*, had concluded that because the driver was not a named insured and because he drove a non-covered auto, John Deere owed no duty to indemnify in light of its conclusion that the MCS-90 endorsement did not "'vary the terms of the policy to create 'coverage' where it did not formerly exist,'" but rather, only created "'a reimbursable obligation as to final judgments rendered against the named insured.'" *Id.* at 856.

The Ninth Circuit reversed the district court, and held that the lower court's reliance on *Harco* was misplaced on numerous grounds. First, the court determined that the district court erred because *Harco* dealt only with a duty to defend and not a duty to indemnify. *Id.* at 857. Second, in *John Deere*, unlike *Harco*, the underlying policy contained a duty to indemnify its insured for non-covered autos; as a result, the MCS-90 endorsement expressly negated the covered auto limitation in the underlying policy. *Id.* Third and finally, the dispute in *Harco* was between the insurer and the insured, and the court in *John Deere* reiterated that the purpose of the MCS-90 endorsement was to ensure that injured members of the public are able to receive judgments from negligent authorized interstate carriers. *Id.* In *John Deere*, the appellants were injured members of the public and, as the court held, were "precisely the group meant to be protected by the MCS-90." *Id.* The court explicitly contrasted the endorsement's applicability to the public with that of insurers disputing ultimate liability in situations where the underlying policy provides no coverage by stating that "the integral purpose of the MCS-90, to protect third party members of the public, *is not implicated in a dispute between two insurers*." *Id.* (emphasis added).

ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT
PAGE – 9

The majority of circuits considering this issue have held that the MCS-90 endorsement does not affect the obligations between joint insurers. *See Canal Ins. Co. v. Distribution Servs., Inc.*, 320 F.3d 488, 492 (4th Cir. 2003) ("The federal courts of appeals which have already considered the issue now before us are split, with the majority holding that the MCS-90 endorsement does not control the allocation of loss among insurers."); *Carolina Cas. Ins. Co. v. Underwriters Ins. Co.*, 569 F.2d 303, 313 (5th Cir. 1978) ("ICC policy factors are frequently determinative where protection of a member of the public or a shipper is at stake, but those factors cannot be invoked by another insurance company which contracted to insure a specific risk and which needs no equivalent protection."); *see also T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667, 672 (5th Cir. 2001); *Carolina Cas. Ins. Co. v. Ins. Co. of N. America*, 595 F.2d 128 (3rd Cir. 1979); *Carolina Cas. Ins. Co. v. Transport Indem. Co.*, 533 F. Supp. 22, 25 (D.S.C. 1981), *aff'd*, 676 F.2d 690 (4th Cir. 1982); *Travelers Ins. Co. v. Transport Ins. Co.*, 787 F.2d 1133, 1140 (7th Cir. 1986); *Grinnell Mut. Reinsurance Co. v. Empire Fire & Marine Ins. Co.*, 722 F.2d 1400, 1404-05 (8th Cir. 1983); *Empire Fire & Marine Ins. Co. v. J. Transport, Inc.*, 880 F.2d 1291, 1298 (11th Cir. 1989).

The Tenth and Sixth Circuits have veered from this line of holding to conclude that the MCS-90 endorsement applies to determine the allocation of loss among insurers. *See Prestige Cas. Co. v. Michigan Mut. Ins.* Co., 99 F.3d 1340, 1348-49 (6th Cir. 1996); *Empire Fire & Marine Ins. Co. v. Guaranty Nat. Ins. Co.*, 868 F.2d 357, 361-64 (10th Cir. 1989). In both cases, these courts found that the MCS-90 endorsement negated limiting language in the underlying policy, making the subject policies primary in nature. *Empire Fire*, 868 F.2d at 364; *Prestige*, 99 F.3d at 1349. The rationale behind this conclusion is that the endorsement cannot mean one thing with respect to injured members of the public and another with respect to insurance companies. *See Empire Fire*, 868 F.2d at 366 n.13 ("The ICC endorsement is not written in special ink which appears for cases involving the public and disappears in cases involving other insurers.") (internal quotation omitted); *Prestige*, 99 F.3d at 1348-49 (similar).

However, the dichotomy complained of by the Tenth and Sixth Circuits finds its roots in the primary purpose of the MCS-90 which, as the Ninth Circuit has explained, is to protect injured members of the public by providing a surety for the payment of claims against negligent motor carriers. *See, e.g.*, *John Deere*, 229 F.3d at 857 ("It is well-established that the primary purpose of the MCS-90 is to assure that injured members of the public are able to obtain judgment from negligent authorized interstate carriers."); *Harco*, 107 F.3d at 736 (same). Moreover, this dichotomy is created by the plain language of the MCS-90 itself, which states that "all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the [insurer]." Dkt. No. 51, Ex. 1 (Collins Decl.). The Fourth and Fifth Circuits have recognized this fact in holding that the MCS-90 endorsement does not control the allocation of loss among insurers:

> [The MCS-90] endorsement accomplishes its purpose by reading out only those clauses in the policy that would limit the ability of a third party victim to recover for his loss. But there is no need for or purpose to be served by this supposed automatic extinguishment of [a] clause insofar as it affects the insured or other insurers who clamor for part or all of the coverage. Indeed, the MCS-90 states that "all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company." Therefore, . . . if an insurer's policy contained the [MCS-90] endorsement, it would not render the insurer primary as a matter of law. [T]he [MCS-90] endorsement is not implicated for the purpose of resolving disputes among multiple insurers over which insurer should bear the ultimate financial burden of the loss.

*Distribution Servs.*, 320 F.3d at 493-94 (quoting *T.H.E.*, 242 F.3d at 673) (first, third, fourth and fifth alteration by *Distribution Services* court; second alteration by *T.H.E.* court).

The approach in *Empire Fire* and *Prestige* clearly represents the minority view, which this Court declines to adopt.[2] Although the Ninth Circuit has yet to decide this specific issue, it has indicated a strong willingness to join the Third, Fourth, Fifth, Seventh, Eighth and Eleventh

---

[2] The defendant objects to characterizing the Tenth Circuit's decision in *Empire Fire* as the minority view. *See* Dkt. No. 59 at 3. However, even the Tenth Circuit has done so. *See Carolina Cas. Ins. Co. v. Yeates*, ___ F.3d ___, 2008 WL 2737274, *7 (10th Cir. July 15, 2008) ("To be sure, *Empire Fire* has been a minority position for quite some time.").

ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT
PAGE – 11

Circuits on this issue. Consistent with the MCS-90's purpose—i.e., to protect injured members of the public—the Ninth Circuit has viewed the endorsement as a surety rather than an extension of coverage. *See, e.g.*, *Harco*, 107 F.3d at 736 (citing *Canal Ins. Co.*, 889 F.2d at 611 (observing that the MCS-90 protection "serves no purpose as against the insured or among insurers")). Furthermore, the Ninth Circuit has specifically embraced the following language from the Fifth Circuit: "'where an insurance policy does not provide coverage for non-listed vehicles except to third-party members of the public through operation of the endorsement, *the policy provides no coverage for purposes of disputes among insurers over ultimate liability*.'" *John Deere*, 229 F.3d at 858 (emphasis added) (quoting *John Deere Ins. Co. v. Truckin' USA*, 122 F.3d 270, 275 (5th Cir. 1997)). The Ninth Circuit then explained, albeit in dicta, that this conclusion was "unremarkable . . . given that the integral purpose of the MCS-90, to protect third party members of the public, is not implicated in a dispute between two insurers." *Id.*; *see also Humphrey's Executor v. United States*, 295 U.S. 602, 627 (1935) (holding that dicta "may be followed if sufficiently persuasive").

The Ninth Circuit's quotation of the Fifth Circuit's language in *Canal*, see *John Deere*, 229 F.3d at 858, coupled with its rejection of the argument that the MCS-90 endorsement makes the policy to which it is attached primary, *see Harco*, 107 F.3d at 736, clearly suggests that it would follow the majority approach. This Court agrees with the statements made by the Ninth Circuit in *Harco* and *John Deere* regarding the meaning and effect of the MCS-90 endorsement, and finds that the endorsement does not apply to determine the allocation of loss between the insurers in this case. This conclusion is faithful not only to the primary purpose behind the MCS-90, but also to its express language, which makes clear that operation of the endorsement is limited, and does not alter the relationship between the insured and insurer or joint insurers as otherwise provided in the applicable policy. Here, by virtue of Canal's settlement with Mr. Longstreath pursuant to the MCS-90 endorsement, the public protection purpose of the endorsement has been met. The endorsement is therefore irrelevant for

purposes of adjudicating the parties' claims for reimbursement in this case, which claims are instead governed by the actual terms of the underlying Canal and Lincoln policies. Those terms, as outlined above, establish that Lincoln's coverage is primary in this case. *See supra*, § III.A.-B.

## VI.  CONCLUSION

Accordingly, and for the foregoing reasons, plaintiff Canal Insurance Company's Motion for Summary Judgment (Dkt. No. 56) is GRANTED, and defendant Lincoln General Insurance Company's Motion for Summary Judgment (Dkt. No. 54) is DENIED. The Court also declares that Lincoln's policy covers the disputed loss on a primary basis and that Canal is entitled to reimbursement for amounts expended in the Wyoming litigation. The Clerk of Court is directed to send copies of this Order to the parties.

DATED this 4th day of August, 2008.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge